UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NAYONN GRAY,

    Plaintiff,                                                   Civil Action No. 20-CV-12261

vs.                                                        HON. BERNARD A. FRIEDMAN

AUTOZONERS LLC and
NICHOLAS ISLES,

    Defendants.

_____/

**OPINION AND ORDER GRANTING DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT**

        This matter is presently before the Court on defendants' motions for summary judgment. (ECF Nos. 21, 30). Plaintiff has responded to each and defendants have replied. Pursuant to E.D. Mich. LR 7.1(f)(2), the Court shall decide these motions without a hearing. For the reasons stated below, the Court shall grant both motions.

        This is a civil rights case. Plaintiff is a 22-year-old African-American male and a Michigan resident. (ECF No. 1, ¶¶ 1, 12). Defendant AutoZoners LLC ("AutoZone") is a corporation headquartered in Tennessee and organized in Delaware. (*Id.*, ¶ 2). Defendant Nicholas Isles is a former assistant store manager at AutoZone store #2256, which is located in Lincoln Park, Michigan. (*Id.*, ¶¶ 3, 13; ECF No. 30, PageID.805). Plaintiff's complaint contains four claims: (1) denial of equal rights, in violation of 42 U.S.C. § 1981; (2) denial of public accommodation, in violation of Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), MICH. COMP. LAWS § 37.2302; (3) negligent supervision, in violation of Michigan common law; and (4) intentional infliction of emotional distress, also in violation of Michigan common law. (ECF No. 1, ¶¶ 35-69).

**I. Background**

Plaintiff alleges that on May 9, 2020, he purchased a Valuecraft car battery ("the battery") from AutoZone store #2256. (ECF No. 22-2 (Gray Dep.), PageID.411). This product is protected by a one-year warranty that excludes damage caused by "misuse, abuse, other faulty parts, improper installation or off-road, commercial or marine use." (ECF No. 30-5 (Warranty Pol'y), PageID.991). There is no limit to the number of exchanges a customer may request under the warranty. Prior to August 7, 2020, plaintiff returned to AutoZone store #2256 three times, on May 11, July 1, and July 22, to request a new battery under the warranty exchange policy. (ECF No. 30-6 (Pl.'s Warranty Hist.), PageID.993). He received a new battery each time. (*Id.*).

However, on August 7, 2020, when plaintiff returned to the store to request a fourth warranty exchange on the battery, his request was denied by then assistant store manager Isles. (ECF No. 1, ¶ 15). Isles stated that prior to testing the battery, he "review[ed] [plaintiff's] warranty file, and . . . told him that unfortunately, I would not be able to process a warranty exchange for him because he had already availed himself of the warranty repeatedly and I was not going to grant an additional warranty exchange." (ECF No. 21-2 (Isles Dep.), PageID.224-25). Isles added that "the extensive warranty history was indicative of a different problem with Mr. Gray's vehicle, and that . . . it was indicative of some use for the battery other than the intended use." (*Id.*, PageID.225). Isles "advised Plaintiff that he thought the alternator might be the issue or that Plaintiff might be using a sound system that the battery could not support."[1] (ECF No. 21, PageID.157; ECF No. 22, PageID.381). In response, plaintiff told Isles that "he felt he was being denied a battery exchange

---

[1] According to defendants' records, plaintiff returned to AutoZone on August 8, 2020, upgraded his Valuecraft battery for a Duralast Gold battery, and purchased a Duralast Gold alternator. (ECF No. 21-3 (Gray Dep.), PageID.301-04, 339). Plaintiff did not confirm or deny returning to the store or making these purchases. (*Id.*).

under the warranty due to his race." (ECF No. 22, PageID.383). The resulting argument between plaintiff and Isles culminated in plaintiff recording a short video of Isles on his cellphone. Plaintiff allegedly wanted Isles "on video saying that [he could not] return the battery." (ECF No. 22-2 (Gray Dep.), PageID.435). Isles responded by stating "put me on Facebook, I'm the white power oppressor." (ECF No. 21, PageID.158; ECF No. 21-2 (Isles Dep.), PageID.233-34).[2] There were other customers in the store during this exchange, one of whom later told plaintiff that he should "call in on" the incident. (ECF No. 22-2 (Gray Dep.), PageID.434).

Instead of providing plaintiff with another new battery on August 7, Isles offered to charge the battery. If the battery could not be charged, Isles said that he would honor the warranty and provide plaintiff with a new battery. (ECF No. 22-2 (Gray Dep.), PageID.432-33). Isles indicated that the battery "tested completely charged" when it was returned to plaintiff (ECF No. 21-2 (Isles Dep.), PageID.246), although plaintiff could not recall whether it was charged. (ECF No. 22-2 (Gray Dep.), PageID.433). Plaintiff adds that defendant Isles misled him about the time it would take for the battery to fully charge, causing plaintiff to return to the store "several times over

---

[2] The twelve second cellphone video, which plaintiff included in his response brief as Exhibit K (ECF No. 27), captured the following exchange between plaintiff and Isles:

> Gray: I just wanted to get you saying that, you know? And what's your name?
>
> Isles: My name is Nicholas Isles. Yeah. Put me on Facebook, the white power oppressor, man.
>
> Gray: White power?
>
> Isles: Go ahead.

3

the span of almost four hours." (ECF No. 1, ¶¶ 21-27). Plaintiff alleges that when the battery was re-installed in his car, it did not work. (ECF No.22, PageID.387).

Plaintiff further alleges that "other employees of Defendants witnessed the racist remarks [and] denial[] and delay of service to Plaintiff, and failed to step in to provide Plaintiff the service that is afforded to others that are not black." (ECF No. 1, ¶ 29). Plaintiff adds that he and his mother "reported Defendants' conduct to their Corporate Office, including but not limited to, emails and a phone conversation, however even then Defendant AutoZone tried to excuse its manager's conduct" and took no further action. (*Id*., ¶¶ 30-31).

In an investigation conducted by AutoZone following the filing of this lawsuit, Isles acknowledged that his recorded statement "was combative" and that he "should have been calmer." (ECF No. 22-10, PageID.724). However he denied any racial animus behind the remark. Isles argued that his statement "was an acknowledgment that [plaintiff] had accused [him] of racism (discrimination), but [it was] not actually an admission of such." (*Id*.). Rather, it "was deeply sarcastic." (*Id*.). Defendant Isles was discharged on September 19, 2020, for speaking to the press about plaintiff's lawsuit, in violation of AutoZone's media policy. (ECF No. 30, PageID.831).

Plaintiff contends that "Defendants' racist conduct constitutes clear and blatant discrimination towards Plaintiff on the basis of his race" and "caused Plaintiff to suffer, among other things, loss of confidence, mental anguish, embarrassment, and extreme emotional distress." (ECF No. 1. ¶¶ 33-34). Defendants presently seek summary judgment on all of plaintiff's claims.

## II. Abandonment of Negligent Supervision Claim (Count III)

As a threshold matter, "a party may abandon claims by failing to address or support them in a response to a motion for summary judgment." *Bauer v. Cnty. of Saginaw*, 111 F. Supp. 3d

767, 782 (E.D. Mich. 2015) (citing *Clark v. City of Dublin, Ohio*, 178 F. App'x 522, 524-25 (6th Cir. 2006)). *See also Cruz v. Capital One, N.A.*, 192 F. Supp. 3d 832, 838-39 (E.D. Mich. 2016) ("A plaintiff abandons undefended claims."). Here, plaintiff has failed to defend Count III – negligent supervision, in violation of Michigan common law. "The Court will thus deem [Count III] abandoned, and Defendants' motion[s] for summary judgment will be granted with respect to that claim." *Bauer*, 111 F. Supp. 3d at 782. Accordingly, the only claims that remain at issue are Counts I, II, and IV – denial of equal rights under § 1981, denial of public accommodation under the ELCRA, and intentional infliction of emotional distress under Michigan common law, respectively.

**III. Summary Judgment**

> In deciding a motion for summary judgment, the Court must view the evidence in the light most favorable to the party opposing the motion for summary judgment. *Kirilenko-Ison v. Bd. of Educ. of Danville Indep. Schs.*, 974 F.3d 652, 660 (6th Cir. 2020). "This includes drawing 'all justifiable inferences' in the nonmoving party's favor." *George*, 966 F.3d at 458 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986)). "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Jackson-VHS*, 814 F.3d at 775 (quoting *Anderson*, 477 U.S. at 249, 106 S. Ct. 2505).

*Strickland v. City of Detroit*, 995 F.3d 495, 503 (6th Cir. 2021).

**A. Discrimination Claims: Violation of 42 U.S.C. § 1981 (Count I) and Violation of Michigan's Elliott-Larsen Civil Rights Act (Count II)**

"Section 1981[3] prohibits intentional race discrimination in the making and enforcing

---

[3] Section 1981 states in full:

> (a) Statement of equal rights. All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings

5

of contracts with both public and private actors. The statute's protection extends to the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 867-68 (6th Cir. 2001) (internal quotation marks omitted).

> In order to establish a claim for racial discrimination under section 1981, a plaintiff must plead and prove that (1) he belongs to an identifiable class of persons who are subject to discrimination based on their race; (2) the defendant intended to discriminate against him on the basis of race; and (3) the defendant's discriminatory conduct abridged a right enumerated in section 1981(a).

*Amini v. Oberlin Coll.*, 44 F.3d 350, 358 (6th Cir. 2006) (citation omitted).

The ELCRA states in relevant part:

Except where permitted by law, a person shall not:

> (a) Deny an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation or public service because of religion, race, color, national origin, age, sex, or marital status.

Section 37.2302(a).

Courts evaluate discrimination claims pursuant to § 1981 and the ELCRA under the

---

> for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.
>
> (b) "Make and enforce contracts" defined. For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.
>
> (c) Protection against impairment. The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

same standard as Title VII of the Civil Rights Act of 1964. *See Perry v. McGinnis*, 209 F.3d 597, 602 n.3 (6th Cir. 2000). Both claims may be established either by direct evidence or inferentially. *See Amini*, 44 F.3d at 358 (regarding § 1981); *In re Rodriguez*, 487 F.3d 1001, 1007-08 (6th Cir. 2007) (regarding the ELCRA).

To prevail on a racial discrimination claim relying on direct evidence, a plaintiff must present evidence "which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the [defendant's] actions. It does not require the fact finder to draw any inferences to reach that conclusion. . . . Evidence of discrimination is not considered direct evidence unless a racial motivation is explicitly expressed." *Amini*, 44 F.3d at 359. *See also In re Rodriguez*, 487 F.3d at 1007 (applying the same standard under the ELCRA).

If, instead, a plaintiff relies on circumstantial evidence to support a claim of racial discrimination, he

> must meet the burden-shifting standard of proof . . . established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Under this standard, a plaintiff must first establish a prima facie case of discrimination by a preponderance of the evidence.

*Christian*, 252 F.3d at 868 (citation omitted). *See also In re Rodriguez*, 487 F.3d at 1007-08 (applying the same standard under the ELCRA). To establish a prima facie claim of discrimination in a commercial establishment, a plaintiff must show:

> (1) []he is a member of a protected class;
> (2) []he made [him]self available to receive and pay for services ordinarily provided by the defendant to all members of the public in the manner in which they are ordinarily provided; and
>
> (3) []he did not enjoy the privileges and benefits of the contracted for

7

> experience under factual circumstances which rationally support an inference of unlawful discrimination in that
>
>> (a) []he was deprived of services while similarly situated persons outside the protected class were not deprived of those services, and/or
>>
>> (b) []he received services in a markedly hostile manner and in a manner which a reasonable person would find objectively unreasonable.
>
> \* \* \*
>
> Factors relevant to subpart (3)(b)'s "markedly hostile" component include whether the conduct is (1) so profoundly contrary to the manifest financial interests of the merchant and/or [its] employees; (2) so far outside of widely-accepted business norms; and (3) so arbitrary on its face, that the conduct supports a rational inference of discrimination.

*Christian*, 252 F.3d at 871 (internal quotation marks omitted).[4] If a plaintiff presents sufficient evidence to establish a prima facie case, "[t]he burden of production then shifts to the defendant to articulate a legitimate, non-discriminatory reason for its actions. To prevail, the plaintiff must then prove by a preponderance of the evidence that the defendant's proffered reason is not its true reason but a pretext for discrimination." *Id.* at 868. To prove pretext, a plaintiff must show "that 1) the stated reasons had no basis in fact; 2) the stated reasons were not the actual reasons; and 3) that the

---

[4] The Sixth Circuit has explained that

> Subpart (3)(b) is written as an alternative to (3)(a) to account for situations in the commercial establishment context in which a plaintiff cannot identify other similarly situated persons. Under this subpart, a retailer's "markedly hostile" conduct may "give rise to a rational inference of discrimination sufficient to support a prima facie case" without any evidence of how similarly situated persons were treated.

*Christian*, 252 F.3d at 871 (citation omitted).

stated reasons were insufficient to explain the defendant's action." *Id.* at 879.

Here, defendants argue that plaintiff lacks direct or circumstantial evidence to support his discrimination claims. (ECF No. 21, PageID.162-66; ECF No. 30, PageID.815-20). As to plaintiff's direct evidence, defendants contend that Isles' recorded statement "does not prove, without inference, that discrimination was a motivating factor in the decision to prohibit Plaintiff from returning his battery for a fourth time." (ECF No. 30, PageID.816; ECF No. 31, PageID.1030). As to plaintiff's circumstantial evidence, defendants argue that (1) plaintiff was not denied service on August 7, 2020; (2) "Plaintiff has no evidence of similarly situated individuals outside of his protected [class] receiving more favorable treatment than [he did]"; and (3) plaintiff cannot show "that he was subjected to 'markedly hostile' treatment." (ECF No. 21, PageID.163-64; ECF No. 30, PageID.818-20). Defendants contend that their conduct aligned with AutoZone's financial interests, as the company cannot resell exchanged batteries at the original retail price. (ECF No. 21, PageID.163-64; ECF No. 30, PageID.818). Defendants add that given plaintiff's warranty history and accusations against Isles immediately preceding his recorded comment, their conduct was not "so far outside of widely-accepted business norms," nor was it arbitrary. (ECF No. 21, PageID.164-66; ECF No. 30, PageID.819). Defendants further argue that even if plaintiff could establish a prima facie case of discrimination, he cannot establish that defendants' legitimate, non-discriminatory reason for their conduct – enforcing AutoZone's warranty policy – was a pretext for race discrimination. (ECF No. 21, PageID.166-67; ECF No. 30, PageID.820-23).

In response, plaintiff contends that he has presented both direct and circumstantial evidence sufficient to overcome defendants' motions for summary judgment. He argues that "in direct response to Plaintiff's request for an explanation as to why he could not exchange his

warranty-protected battery, Defendant[] Isles responded to 'put me on Facebook, the white power oppressor, man,'" which constitutes "palpable" direct evidence. (ECF No. 22, PageID.385, 391; ECF No. 34, PageID.1209-10). Plaintiff further argues that "a genuine issue of material fact exists as to whether [defendants] deprived Plaintiff of service while similarly situated persons outside the protected class were not" and "whether Plaintiff received services in a markedly hostile and objectively discriminatory manner." (ECF No. 22, PageID.392-97, ECF No. 34, PageID.1211-12). Finally, plaintiff contends that defendants' non-discriminatory reason for their conduct has "no basis in fact" because the warranty did "not limit the number of battery exchanges during the warranty period" and another employee testified to the fact that customers have, on "many occasions," requested multiple warranty exchanges over a short period of time. (ECF No. 22, PageID.398-99, ECF No. 34, PageID.1217-18; ECF No. 22-5 (Segovia Dep.), PageID.545).

Having reviewed the briefs, exhibits, and relevant case law, the Court concludes that plaintiff has failed to establish a claim under § 1981 or the ELCRA. First, plaintiff lacks direct evidence that discrimination motivated defendants' actions. Although inappropriate, Isles' statement – "put me on Facebook, the white power oppressor" – does not, without inference, lead to the conclusion that defendants were denying plaintiff services based on his race. Plaintiff compares the instant case to *DiCarlo v. Potter*, 358 F.3d 408 (6th Cir. 2004) and *Scheick v. Tecumseh Pub. Sch.*, 766 F.3d 523 (6th Cir. 2014). (ECF No. 22, PageID.391; ECF No. 34, PageID.1209). In the former, a supervisor allegedly called the Italian-American plaintiff a "dirty wop" and complained of there being too many "dirty wops" working at his place of employment shortly before plaintiff was terminated. *DiCarlo*, 358 F.3d at 413. In the latter, prior to the 56-year-old principal's termination, the school superintendent allegedly twice told him that the board "wanted someone younger" and

10

once informed him that the board wanted him to retire. *Scheick*, 766 F.3d at 527. In the instant video, Isles does not name-call or directly tie race to his service decisions that day. Isles' comment appears to be in response to plaintiff's decision to record him on a cellphone following plaintiff's remark that "he was being denied a battery exchange under the warranty due to his race." (ECF No. 22, PageID.383).

Second, plaintiff lacks circumstantial evidence to support his claim. Plaintiff has presented no evidence that similarly situated individuals outside of his protected class receive more favorable treatment from defendants than members of the protected class. Rather, plaintiff stated that he was never previously treated unfairly at store #2256, he never saw another African-American customer being treated unfairly at the store, he was never previously treated poorly by Isles, and he was not aware of any similar accusations against Isles. (ECF No. 21-2 (Gray Dep.), PageID.300, 324-25).

Further, plaintiff has failed to show that he received services in a "markedly hostile" manner. On August 7, plaintiff requested his fourth warranty exchange – his fifth new battery in a three-month period. Isles stated that it appeared something apart from the battery was causing the problem, such as a faulty alternator or incompatible sound system. Isles said that he would charge the battery and, if it could not hold a charge, he would honor the warranty exchange. As another employee testified, this was "the protocol." (ECF No. 22-5 (Segovia Dep.), PageID.545). Based on plaintiff's warranty history and the fact that AutoZone cannot resell exchanged batteries at the original retail price, Isles' decision to charge plaintiff's battery, rather than provide a fifth new battery, was not "(1) so profoundly contrary to the manifest financial interests of the merchant and/or [its] employees; (2) so far outside of widely-accepted business norms; [or] (3) so arbitrary

11

on its face, that the conduct supports a rational inference of discrimination." *Christian*, 252 F.3d at 871.

Plaintiff attempts to draw parallels between the instant case and three cases that were decided by other courts within this circuit: *Unroe v. Bd. of Educ. Rock Hill Loc. Sch.*, No. 1:040-CV-00181, 2006 WL 22081 (S.D. Ohio Jan. 4, 2006); *Airbrush Express, Inc. v. Jefferson Mall Co., L.P.*, No. Civ.A. 03-691-C, 2005 WL 1567324 (W.D. Ky. June 30, 2005); and *Leach v. Heyman*, 233 F. Supp. 2d 906 (N.D. Ohio 2006). In *Unroe*, the school's superintendent said "I don't want them kind around here," allegedly referring to African-American students with disabilities, including plaintiff's adopted children. *Unroe*, No. 1:04-CV-00181, at *16. In *Airbrush Express*, the assistant manager of a shopping mall allegedly indicated that plaintiff, an operator of an airbrush t-shirt and car tag kiosk, attracted too many "African-American" or "African" clients, which was a "concern to the mall" and was "not a good image." *Airbrush Express*, No. Civ.A. 03-691-C, at *1. And in *Leach*, a convenience store clerk allegedly called an African-American customer a "N****r" and threatened to "kick his ass" following a tense interaction between the parties. *Leach*, 233 F. Supp. 2d at 908. Plaintiff contends that these cases present "less serious examples of racially charged conduct" compared to Isles' statement and conduct on August 7. (ECF No. 22, PageID.394; ECF No. 34, PageID.1213). The Court disagrees.

Here, plaintiff's allegations against defendants are as follows: (1) Isles denied plaintiff a fourth warranty exchange, stating that he would charge the existing battery and exchange it if it could not hold a charge; (2) plaintiff accused Isles of being racist and began filming Isles on his cellphone; (3) Isles stated, "put me on Facebook, the white power oppressor." As noted above, Isles did not name-call or directly tie race to his service decisions that day. Although the altercation

12

between the parties was unprofessional and inappropriate, the facts of this case are far less serious than those cited by plaintiff and are neither direct nor circumstantial evidence of race discrimination.

Moreover, even if plaintiff could establish a prima facie case of discrimination, he has failed to show by a preponderance of the evidence that defendants' proffered reason for their conduct is not their true reason but a pretext for discrimination. Here, the stated reason – enforcing AutoZone's warranty policy – has a basis in fact and is sufficient to explain defendants' actions. Although the warranty at issue does not limit the number of exchanges that can be made during the warranty period, the exchange policy excludes damage caused by "misuse, abuse, or other faulty parts." Based on plaintiff's extensive warranty history and Isles' professional experience, Isles concluded that plaintiff's request fell within one of the warranty exceptions. Plaintiff has failed to present sufficient evidence to cast doubt on this rationale. For these reasons, the Court concludes that there is no genuine issue for trial as to Counts I and II.

### B. Intentional Infliction of Emotional Distress (Count IV)

> To establish a claim of intentional infliction of emotional distress, a plaintiff must prove the following elements: (1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress. The conduct complained of must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.

*Hayley v. Allstate Ins., Co.*, 686 N.W.2d 273, 276 (Mich. Ct. App. 2004). "The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. . . . [Rather,] plaintiffs [are] expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind." *Roberts v. Auto-Owners Ins. Co.*, 374 N.W.2d 905, 909 (Mich. 1985) (quoting RESTATEMENT (SECOND) OF

13

TORTS § 46, cmt. d). *See also Mroz v. Lee*, 5 F.3d 1016, 1019-20 (6th Cir. 1993) (compiling examples of allegations that could be considered "extreme and outrageous conduct").

As to the degree of emotional distress that must be suffered to trigger liability, the Michigan Supreme Court has explained that liability "applies only where the emotional distress has in fact resulted, and where it is severe. . . . The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it." *Roberts*, 374 N.W.2d at 911 (quoting RESTATEMENT (SECOND) OF TORTS § 46, cmt. j).

Based on the briefs, exhibits, and relevant case law, the Court concludes that plaintiff has failed to make the requisite showing as to either "extreme and outrageous conduct" or "severe emotional distress." Plaintiff relies on the following facts to establish Count IV: (1) defendants refused to allow a fourth warranty exchange – plaintiff's fifth new battery in a three-month period; (2) defendants instead charged the existing battery and offered to provide a new battery if it could not hold a charge; (3) plaintiff indicated that he was being denied service because of his race, which resulted in an argument between him and Isles; (4) plaintiff began recording Isles on his cellphone; (5) in response, Isles stated, "put me on Facebook, the white power oppressor." Plaintiff alleges that as a result of this exchange, he "had to go home embarrassed" and felt "degraded almost kind of." (ECF No. 22-2 (Gray Dep.), PageID.416). Plaintiff also indicated that he purchased various books to "get [his] mind off of" the incident. (*Id*., PageID.417). He otherwise does not elaborate on the severity, nature, or manifestations of the distress he suffered.

While Isles' comment was definitely inconsiderate, it was not "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." Further, plaintiff provides "no evidence of grief, depression,

14

disruption of life style, or of treatment for anxiety or depression." *Roberts*, 374 N.W.2d at 912. "[T]he reaction testified to does not even approach the level of emotional distress contemplated by the Restatement drafters in requiring that 'no reasonable man could be expected to endure it.'" *Id*. The Court therefore concludes that there is no genuine issue for trial as to Count IV.

### IV. Conclusion

Accordingly,

IT IS ORDERED that defendants' motions for summary judgment (ECF Nos. 21, 30) are granted.

s/Bernard A. Friedman
BERNARD A. FRIEDMAN
Dated: January 4, 2022   SENIOR UNITED STATES DISTRICT JUDGE
Detroit, Michigan